CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 31 2012

JULIA C. DUDLEY, CLERK
BY: *L. Craft*
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| PAUL C. GRAYBILL, JR., | ) | |
| | ) | **Case No. 7:11-cv-00331** |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| HAROLD W. CLARKE, DIRECTOR, | ) | **By:  James C. Turk** |
| | ) | **Senior United States District Judge** |
| Respondent. | ) | |

Petitioner, Paul C. Graybill, Jr. ("Petitioner" or "Graybill"), proceeding pro se, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1).  Respondent filed a Motion to Dismiss, (Dkt. No. 36), and a Supplemental Response, (Dkt. No. 55), after Petitioner amended his claims, (Dkt. No. 33).  Petitioner replied to Respondent's Supplemental Response.  (Dkt. No. 62).  Accordingly, the matter is now ripe for decision.  For the reasons stated below, Respondent's Motion to Dismiss is **GRANTED** and the Petition for a Writ of Habeas Corpus is **DENIED**.

## I.      Factual and Procedural Background

The Petitioner was convicted at trial in the Circuit Court of Botetourt County of unlawful wounding and object sexual penetration on June 26, 2008.  (Dkt. No. 38-3 at 1-6).  He was sentenced to 10 years in prison.  (Id.).  Viewed in the light most favorable to the Commonwealth, the evidence presented at trial is described below.[1]

---

[1] The facts are adapted from the Virginia Court of Appeals' order denying Graybill's petition for appeal. Graybill v. Commonwealth of Virginia, No. 2231-08-3 (Va. Ct. App. Feb. 23, 2009).

1

On September 9, 2006, the victim encountered Graybill at a local market. The victim knew Graybill, but did not know Graybill's companion, Russell Bowles ("Bowles"). The victim, who was 40 years old at the time of trial, had suffered head injuries in a car accident as a teenager and was unable to drive. He asked Graybill for a ride to his home in Roanoke, Virginia and Graybill agreed.

Graybill provided the victim with beer and marijuana during the ride. En route to Roanoke, Graybill stopped by his trailer and invited the victim inside to wait. The victim sat on the sofa and continued to drink beer. Graybill gave the victim an open Corona beer to drink. A short time later, Graybill and Bowles asked the victim if he still wanted a ride to Roanoke. The victim responded affirmatively and started walking to the door. Once standing, the victim noticed his "legs felt a little bit trembly" and were "going out all the time" as if he were intoxicated. The victim admitted to consuming between seven and ten beers that night, but testified that based on prior drinking experiences that amount of beer would not have affected him in that manner. He further testified he fell twice before reaching Graybill's truck. By the time Bowles helped him into the truck, the victim could not speak and had difficulty feeling his legs. A short time later, he lost consciousness.

The victim's next recollection was Graybill dragging him by his pants out of the truck and removing his pants. The victim continued to have no feeling in his legs. Graybill stood behind the victim, made a thrusting motion, and slammed the victim's head into the truck a couple of times. The victim heard Graybill say "Get up there like that." Then Graybill slammed the victim's head again and penetrated the victim's rectum with something "[very] hot." The victim saw Graybill's "face saying something" and then Bowles stood behind him. The victim felt his rectum being penetrated again and "cooling down" on the inside. The victim's next

2

recollection was of being pushed out of the truck in his father's driveway. Eventually, the victim crawled into his father's house and got into bed.

The next morning, the victim was bleeding from his rectum and his teeth were broken. The crotch of his pants was soaked in blood. Forensic testing determined the blood belonged only to the victim. However, Graybill's DNA was recovered from a stain on the fly area of the victim's boxer shorts. The victim told his father that two men had raped him and his father called the police. When Deputy Kevin Hix arrived ("Deputy Hix"), the victim stated he had been assaulted by Graybill and a Caucasian man he did not know. The victim could not provide Graybill's street address but stated that a long driveway led up to Graybill's trailer and the driveway was gated with a strand of electric wire. He also told Deputy Hix that he had ridden in a red or maroon colored work truck with white on it.

Deputy Hix acquired Graybill's address and visited his trailer immediately upon leaving the victim's house. A truck matching the victim's description was parked outside the trailer and a single strand of electric wire gated the driveway.

Detective Nelson Tolley ("Detective Tolley") transported the victim to the hospital. The victim was bleeding profusely and unable to sit down. Annette Tarpley (" Nurse Tarpley"), the forensic nurse who examined the victim, noted the victim had a broken front tooth and either bruises or broken blood vessels on his forehead, sternum, left brow, hip, and posterior. He had additional bruising on his forearm, as well as multiple abrasions to his abdomen, chest, knees, elbows, and forearms. He also had blistered, open wounds on his buttocks that were consistent with a burn and blisters and abrasions on both hands. Nurse Tarpley also noted that the victim could not explain the presence of white adhesive on his arms.

3

The victim was in so much pain that Nurse Tarpley had difficulty performing a rectal examination. Both sides of the anal opening were "very red and swollen, hard [and] tender to [the] touch." Tarpley described the immediate area around the anal opening as "raw" and bruised. She noted a small tear that continued to ooze blood. In her opinion, the victim's bleeding originated from inside his rectum rather than from the small tear at the anal opening, but she was unable to visualize his internal injuries because inserting a scope into his rectum would have been too painful. The victim noted that he continued to have rectal pain for several weeks after the incident and suffered from explosive diarrhea.

Drug testing revealed that the victim's urine contained prescription medications: amitriptyline and cyclobenzapine. A forensic toxicologist testified that amitriptyline is a central nervous system depressant that can cause drowsiness, dizziness, disorientation, and lack of muscle control. Cyclobenzaprine, or flexeril, is another depressant which can result in drowsiness and lack of muscle coordination. The forensic toxicologist also testified that alcohol would enhance the effects of the drugs. The victim denied he was taking any prescription medication at the time of the incident.

When the police visited Graybill's trailer on Septemtber 10, 2006, Graybill saw them approach and escaped with Bowles through the back window. The two men then traveled by bus to North Carolina. A few days later, Detective Tolley and six other officers searched Graybill's trailer. While the officers found neither depressant medications nor blood in the trailer, Tolley found duct tape in a trash can that was "wrapped around like it was wrapped around someone's arms and ... had been cut off." Detective Tolley remembered the presence of adhesive on the victim's arms. Forensic testing revealed DNA on the tape, which belonged to both Graybill and the victim. Additionally, the victim's hair was found on the sticky side of the tape.

4

Police arrested Graybill on October 3, 2006. Approximately two weeks later, Graybill requested to speak to Detective Tolley. The interview between Graybill and Detective Tolley was taped. In the interview, which was played in full to the jury, Graybill first stated he wanted to speak to Detective Tolley to clarify that he and the victim had consensual sex on the night the victim was injured. Graybill then stated that he had had consensual sex with the victim on three prior occasions and that this could be verified by Chris Wrenn ("Wrenn"). Graybill claimed he told Wrenn about his prior sexual encounters with the victim. Detective Tolley spoke to Wrenn about these claims and Wrenn denied any knowledge of the encounters. Also during the interview, Graybill stated that his DNA would not be found on the victim. Finally, towards the end of the interview Graybill indicated that he thought the case was politically motivated.

Graybill hired an investigator, Sue Rubez ("Investigator Rubez" or "Rubez") to assist him with his defense. Investigator Rubez visited Graybill's trailer twice. Prior to her initial visit on November 15, 2006, Rubez was informed that the victim had fallen and broken his tooth near the bathroom. Rubez found a broken tooth in the hallway between the bedroom and the bathroom. The DNA in the tooth matched the victim's DNA. Nearly a year after the incident, Graybill told Investigator Rubez to return to Graybill's trailer and look for blood stains on the carpet in the same area as where the broken tooth was found. Rubez found a faint stain in the hallway. The carpet appeared to have been cleaned and previously pulled from the floor. On the reverse side of the carpet Rubez found a large stain that had seeped through from the surface. The stain contained the victim's blood.

Graybill took the stand in his own defense. He denied drugging the victim or assaulting him. He testified that he and the victim had had consensual sex in the past. He further stated that he, Bowles, and the victim had engaged in sexual relations in his trailer on September 9,

5

2006. Graybill explained that the victim burned himself when he fell and knocked over two lit candles. The men had been watching pornography and Graybill bound the victim with tape at the victim's request. Graybill stated that the victim's rectal injuries were the result of another fall while the men were in the bathtub together. Graybill was digitally manipulating the victim's anus when the victim slipped and fell on Graybill's hand. The victim was bleeding and Graybill and Bowles offered to take him to the hospital, but the victim refused and asked instead to be taken home. When Bowles walked the victim to the door of the trailer, the victim was angry and told Graybill and Bowles that they would be "sorry." Graybill and Bowles returned to the trailer and cleaned up the blood and spilled wax from the candles.

After being convicted in the Circuit Court of Botetourt County, Petitioner appealed his convictions to the Court of Appeals of Virginia, challenging the sufficiency of the Commonwealth's evidence. The Court of Appeals of Virginia denied his petition for appeal on February 23, 2009. Petitioner then appealed to the Supreme Court of Virginia, which also refused his petition for appeal on September 8, 2009.

Thereafter, Petitioner filed a state habeas corpus petition in the Supreme Court of Virginia. He subsequently amended that petition. Between the initial and amended petitions, Graybill raised 27 claims. The Supreme Court of Virginia dismissed the habeas petition on July 5, 2011, and Petitioner did not file for rehearing.

On July 8, 2011, Petitioner timely filed his present federal habeas corpus petition in which he raised 29 claims.[2] Petitioner was subsequently granted leave of Court to file an

---

[2] Graybill's habeas petition did not list all of his claims in one central location; rather they were spread throughout his lengthy submission. In subsequent filings Graybill appears to contest the manner in which the Commonwealth and the Court have construed his claims. The Court has liberally construed Graybill's claims, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (stating courts must liberally

6

Amended Petition. Because of the voluminous nature of Petitioner's prior filings, the Court directed Petitioner that if he wished to submit any additional claims he was to do so concisely and without supporting documentary exhibits. (Dkt. No. 27). The Amended Petition, although not concise by this Court's definition of that term, raised 17 claims. (Dkt. No. 33). The Amended Petition made reference to previously submitted documentary exhibits and included legal argument in addition to a list of claims. Several of the 17 claims were duplicative of or closely related to claims raised in the initial federal habeas petition.[3] The Court allowed the Commonwealth to file a supplement to its prior motion to dismiss ("Supplemental Response") to address these 17 additional claims and to address the applicability of the Supreme Court's recent decision in Martinez v. Ryan, 132 S. Ct. 1309, 1318 (2012). (Dkt. No. 55). Petitioner was permitted to reply to the Commonwealth's Supplemental Response on or before May 27, 2012. (Dkt. No. 53). Petitioner requested an extension of time until June 24, 2012, (Dkt. No. 57), that the Court granted, (Dkt. No. 60). Petitioner then timely replied. (Dkt. No. 62).[4]

---

construe pro se pleadings), which may have resulted in subdivision of claims Graybill considers to be one claim. (See Dkt No. 62 at 4) (renumbering all claims as 14 claims). Contrary to Graybill's suggestion this does not prejudice Graybill but rather ensures the Court has considered every possible ground for relief.

[3] Additional Claim 3 is partially duplicative of Original Claim F(2) and G(2). Additional Claim 4 is duplicative of Original Claims F(2), G(2), and O. Additional Claim 5 is duplicative of Original Claims B, D(1), and D(3). Additional Claim 6 is duplicative of Claim A(9). Additional Claim 8 is duplicative of Original Claim L(1). Additional Claim 9 is duplicative of Original Claims in A(6), A(7), and L(2). Additional Claim 11 is duplicative of Original Claim I. Additional Claim 14 is duplicative of Original Claims A(2) and A(4). Additional Claim 15 is duplicative of Claims D(1) and D(3). Additional Claim 16 is duplicative of Original Claims M and P. Finally, Additional Claim 17 is duplicative of Original Claim A(5).

[4] In his reply, Petitioner states that the "Attorney General is responsible for [his] inability to respond accurately [and] concisely to the motion to dismiss." (Dkt. No. 61 at 1). He goes on to explain that is because the "Va. D.O.C.[] [took] possession [of] all [his] personal property, [l]egal files and the entire case petition filing record with all paper and legal books." (Id.). Finally, he states he was "robbed of [his] final seven days of preparation time that was grant[ed] by this Court." (Id. at 1-2). However, Petitioner does not state what additional arguments he would have made if given more time. Nor does Petitioner account for the fact that the Court gave him a lengthy initial reply time limit and subsequently granted Petitioner's extension request.

## II.    Standard of Review

### A.  Summary Judgment Standard

Summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). More than an opposing narrative is required to defeat a motion for summary judgment because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). An otherwise "properly supported motion for summary judgment" will not be defeated by the existence of merely any factual dispute, no matter how minor; rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To withstand a summary judgment motion, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). Neither conclusory allegations nor the production of a "mere scintilla of evidence" in support of a non-moving party's case suffices to forestall summary judgment. Id. In cases where "the result is obvious," based on the pleadings, summary judgment should be granted. Bostick v. Stevenson, 589 F.3d 160, 165 (4th Cir. 2009).

### B.  AEDPA's Deferential Standard of Review

Federal courts grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the reforms of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a

8

federal habeas court may not grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court unless the state court adjudication (1) "resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). For the purposes of 28 U.S.C. § 2254(d)(1), an adjudication on the merits applies to all claims that were reached and decided in state court, even if decided in summary fashion.

A state court decision is "contrary to" the Supreme Court's clearly established precedent if (1) the state court "arrives at a conclusion opposite to that reached by the Supreme Court as a matter of law" or (2) the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). By contrast, a state court decision constitutes an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct legal rule but unreasonably applies it to the facts of the particular case; (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or (3) "unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

A federal district court sitting in review of a state court judgment must afford deference to the state court determination. See 28 U.S.C. § 2254(d). The Supreme Court has explained that § 2254(d) contains a "highly deferential standard for evaluating state-court rulings" that "demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted). Indeed, in the case of an

9

"unreasonable application" the Supreme Court has explained that because an "application must be 'objectively unreasonable'" before a court may grant habeas relief, "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010). An "unreasonable application" is not synonymous with error because "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A federal court may not disturb the sound judgment of the state court and find "an unreasonable application of federal law unless the state court's decision lies well outside the boundaries of permissible differences of opinion." Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted).

## C. Procedural Default

The Supreme Court has established that a federal court may not grant habeas relief for unexhausted state claims not presented to the highest state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). Absent a valid excuse, a state prisoner must exhaust his state court remedies before seeking habeas corpus relief in federal court. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); 28 U.S.C. § 2254(b). "The burden of proving that a claim is exhausted lies with the habeas petitioner." Id. (citing Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994)). A petitioner satisfies the exhaustion requirement by showing that the "essential legal theories and factual allegations advanced in federal court … [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd 996 F.2d 1560 (4th Cir. 1993). If claims are not appropriately raised in state court proceedings then they are procedurally defaulted.

10

Furthermore, the doctrine of procedural default provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard, 134 F.3d at 619 (citing Coleman v. Thompson, 501 U.S. 722, 731–32 (1991)). See also Teague v. Lane, 489 U.S. 288, 298 (1989). Thus, "the exhaustion requirement for claims not fairly presented to the state's highest court is … met when a state procedural rule would bar consideration if the claim was later presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), overruled on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Under Virginia's procedural rules petitioners are barred from raising claims not presented in one's initial state habeas corpus petition, as those claims would be deemed successive and Virginia prohibits successive state habeas petitions. Va. Code § 8.01-654(B)(2); Va. Code § 8.01-654(A)(2); Hass v. Lee, 560 S.E.2d 256, 257-58 (Va. 2002).

A petitioner may, however, excuse a procedurally defaulted claim by demonstrating either (1) cause and actual prejudice for his or her failure to exhaust a claim or (2) that his or her confinement constitutes "a miscarriage of justice." Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). A petitioner can show cause by demonstrating "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule … [including] that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). To make a showing of prejudice the petitioner must demonstrate that the complained of conduct caused real harm to the petitioner. See Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977).

11

Furthermore, the Supreme Court recently held that, for ineffective assistance of counsel claims, a petitioner can demonstrate cause to excuse his or her procedural default if he or she presents a "substantial" claim of ineffective assistance of counsel under Strickland. See Martinez, 132 S. Ct. at 1318 (stating "a prisoner may establish cause for a default of an ineffective-assistance claim … where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington," and that "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit") (internal citations omitted)). The Supreme Court reasoned that because "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." Id. at 1316. Finally, the Supreme Court has stated that this analysis is also applicable to those cases in which the State "did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding," such as the present case. Id. at 1317.

A petitioner demonstrates a "miscarriage of justice," through "[a] proper showing of actual innocence." Wolfe, 565 F.3d at 160 (citing House v. Bell, 547 U.S. 518, 536-37). A petitioner is "actually innocent" if "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). The purpose of the actual innocence exception is "to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Id. at 324. Indeed, this exception to procedural default reflects society's "fundamental value determination … that it is far worse to convict an

12

innocent man than to let a guilty man go free." In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring). Because this standard "focus[es] the inquiry on actual innocence...the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Schlup, 513 U.S. at 327-28.

### D. Ineffective Assistance of Counsel Standard

Many of Graybill's claims focus on the allegedly ineffective assistance of counsel provided by Graybill's trial and appellate counsel. With ineffective assistance claims the court looks to the familiar "cause and prejudice" test delineated in Strickland v. Washington, 466 U.S. 668 (1984). See Knowles v. Mirzayance, 556 U.S. 111, 122–23 (2009) ("Indeed, this Court has repeatedly applied [Strickland] to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point"). Under Strickland, a successful claim for ineffective assistance of counsel must establish (1) that counsel's performance fell below an objective standard of reasonableness, such that counsel was not acting as the counsel guaranteed by the Sixth Amendment; and (2) that but for counsel's objectively unreasonable performance, there is a reasonable probability the outcome of the trial would have been different. Strickland, 466 U.S. at 687–91. If a reviewing court determines that the petitioner's claim fails on either the "cause" or the "prejudice" prong of the Strickland test, the court's inquiry may stop there. Id. at 697.

To establish deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In so doing, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional conduct." Id. at 690. Courts must "indulge a

13

strong presumption" that defense counsel's conduct fell within the bounds of reasonable conduct to avoid the distortion of hindsight. Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 689). Indeed, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To establish prejudice, a petitioner "must show that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court has defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694. Specifically, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. However, that is not to say the petitioner must prove that the jury's verdict would have been different. Gray v. Branker, 529 F.3d 220, 234-35 (4th Cir. 2008) (reversing and awarding habeas relief because the state court, in assessing prejudice, asked whether the "jury would necessarily" have reached a different conclusion but for counsel's deficiency). Under this standard, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S.Ct. 770, 792 (2011).

In the context of a habeas petition the Strickland standard has been described as "doubly deferential" because the deferential review under AEDPA overlaps with the deferential standard under Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1410-1411 (2011). Courts must "apply the two standards simultaneously rather than sequentially," which "imposes a very high burden for a petitioner to overcome, because these standards are each 'highly deferential' to the state court's adjudication and, 'when the two apply in tandem, review is doubly so.'" Richardson v.

14

<u>Branker</u>, 668 F.3d 128, 139 (4th Cir. 2012) (quoting <u>Harrington</u>, 131 S. Ct. at 788) (citations omitted). With these principles in mind, the Court now turns to each of Graybill's claims.

## III. Discussion

### A. Allegations of a Fundamental Miscarriage of Justice

Construed liberally, Graybill makes an attempt to revive his procedurally defaulted claims, discussed in detail below, by arguing he is "actually innocent" of the crimes of which he was convicted because the sexual encounter with the victim was, in fact, consensual. As explained above, a petitioner may demonstrate "a miscarriage of justice," through "[a] proper showing of actual innocence." <u>Wolfe</u>, 565 F.3d at 160 (citing <u>House</u>, 547 U.S. at 536-37). A petitioner is "actually innocent" if "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." <u>Schlup</u>, 513 U.S. at 327. Thus, a showing of actual innocence requires a showing of new reliable evidence that the sexual encounter was in fact consensual. Unsupported allegations of innocence are insufficient. In the present case, Graybill has not come forward with any new evidence, let alone new reliable evidence. Thus, Graybill cannot excuse any of his procedurally defaulted claims under this exception to procedural default.

### B. Procedurally Defaulted Claims

#### 1. Original Claim H(1)

Original Claim H(1) fails because Graybill has not exhausted his state court remedies and the claim is now procedurally barred. In Claim H(1) Graybill argues that trial counsel was constitutionally ineffective for failing to prevent the Commonwealth from using Virginia's Rape Shield Law to "conceal" the victim's alleged prior sexual assault of a five-year-old boy. (Dkt.

No. 1-1 at 3).[5] Here, Graybill did not present and has not argued that he presented Claim H(1) during his direct appeal or in his state habeas petition. Under Virginia's procedural rules, Graybill could not now present this claim to the Supreme Court of Virginia as it would be a prohibited successive habeas petition. See Va. Code §§ 8.01-654(B)(2) & 8.01-654(A)(2). Thus, this claim is procedurally defaulted for purposes of federal review. Gray, 518 U.S. at 160.

Graybill cannot excuse his procedural default because he has failed to demonstrate cause and prejudice. Graybill has not presented evidence of an "objective factor external to the defense" that prevented him from raising the claim, Murray, 477 U.S. at 488, or evidence of a "substantial" claim of ineffective assistance of counsel under Strickland, Martinez, 132 S. Ct. at 1318. Virginia's Rape Shield Law prohibits the introduction of "evidence of specific instances of [the complaining witness's] prior sexual conduct" unless the conduct is "relevant" and is either (1) evidence "offered to provide an alternative explanation for physical evidence of the offense charged," (2) evidence "of sexual conduct between the complaining witness and the accused" offered in support of a defense that the sexual conduct was consensual, or (3) evidence "offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution." Va. Code Ann. § 18.2-67.7. Here, the evidence Graybill claims ought to have been introduced—the victim's alleged assault of the five-year-old boy—does not fall within one of these exceptions and therefore is inadmissible. Any attempt by counsel to introduce such evidence would have been futile, and trial counsel cannot be held ineffective for failing to pursue futile arguments, motions, or strategies. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005).

---

[5] There is some dispute as to the age of the victim at the time of the alleged assault. Graybill argues the victim was 15 at the time of the alleged assault and could have been tried as an adult, while the Commonwealth asserts the victim was 11 or 12 years old. This disagreement is, however, immaterial to the application of Virginia's Rape Shield Law to the present case.

16

Thus, because Graybill has failed to satisfy the performance prong of <u>Strickland</u> he has not made a "substantial" ineffective assistance of counsel claim and his procedural default is not excused. Thus, this Court dismisses Claim H(1).

### 2. *Additional Claim 12, Additional Claim 13, and Original Claim V*

Additional Claim 12, Additional Claim 13, and Original Claim V fail because Graybill has not exhausted his state court remedies and these claims are now procedurally defaulted. These claims are similar in that they concern trial counsel's presentation of the Defense expert's curriculum vitae and testimony. In Additional Claim 12 Graybill asserts that trial counsel was ineffective for failing to ask a sufficient number of questions about the Defense's DNA expert witness's curriculum vitae. (Dkt. No. 33 at 14). In Additional Claim 13, Graybill contends that trial counsel was ineffective for "surreptitiously [sic] ... without Mr. Graybill's knowledge and against his legal and financial interest" failing to introduce into evidence the expert witness's DNA slide presentation for which Graybill "paid in advance ... a fee of $2,500." (Dkt. No. 33 at 15). In Claim V, Graybill argues that his trial counsel was constitutionally ineffective for failing to argue for the introduction of the Defense's DNA expert through a "formal reading and explanation" of the expert's curriculum vitae. (Dkt. No. 1-7 at 14).

Here, Graybill did not present any of these three claims during his direct appeal or in his state habeas petition. Indeed, the record indicates that Graybill only signed the affidavit used to support Original Claim V on June 30, 2011, several months after submitting his "supplemental" state habeas petition. Nor has Graybill argued that he previously presented these grounds. Under Virginia's procedural rules these claims could not now be presented to the Supreme Court of Virginia. Thus, these three claims are procedurally defaulted.

17

Graybill has not made a showing of cause and prejudice either by presenting evidence of an "objective factor external to the defense" prevented him from raising the claim, Murray, 477 U.S. at 488, or by presenting evidence of a "substantial" claim of ineffective assistance of counsel under Strickland, Martinez, 132 S. Ct. at 1318. Review of the record indicates that trial counsel entered the Defense expert's curriculum vitae into evidence at trial. (2/26/08 Tr. 136-37). As the jurors had the actual curriculum vitae available as a reference during deliberations, it was unnecessary to read the curriculum vitae to the jurors or extensively question the expert about her accomplishments and educational background. To the extent Graybill argues that it would have been more persuasive to read and question the expert witness extensively about her educational background and accomplishments, (Dkt. No. 62-1 at 22), rather than relying on the jurors to review the curriculum vitae during deliberations, that is a question of trial strategy and is thus within the discretion of trial counsel. Gonzales v. United States, 553 U.S. 242, 249-50 ("In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume."). The same precedent controls counsel's decision not to use the slide presentation. Id. Additionally, the Court notes that although Graybill alleges trial counsel did not present the curriculum vitae through questioning and did not present the slide presentation in order to condense what was scheduled to be a three-day trial into two days, (Dkt. No. 62-1 at 23-24), Graybill has failed to allege how reading the expert's qualifications and background to the jury or showing the slide presentation would have altered the outcome of his trial. It is not sufficient for Graybill to say better presentation of this testimony and evidence would have altered the outcome; he must explain how or why the evidence would have had that effect. Graybill has failed to do this. Finally, the Commonwealth

18

has argued that the Defense's DNA expert's testimony was relevant to the abduction charge and because Petitioner was acquitted of that charge, Graybill cannot show prejudice.

Graybill has failed to show deficient performance or prejudice under Strickland and therefore he has not made a "substantial" showing of ineffective assistance of counsel. Martinez, 132 S. Ct. at 1318. Accordingly, Additional Claims 12 and 13 and Original Claim V are barred from this Court's review under the doctrine of procedural default and thus cannot provide a basis on which this Court may grant habeas relief. This Court must dismiss those claims.

### 3. *Original Claims C, F(1), G(1), J(1), and (L)(1)*

Original Claims C, F(1), G(1), J(1), and L(1) all concern errors made by the trial court. These claims fail because they are procedurally defaulted and Graybill has not demonstrated cause and actual prejudice to excuse the default. In Original Claim C, Graybill alleges that the trial court erred in denying specific voir dire questions proffered by him regarding the juror's opinions on homosexuality and sexual conduct. (Dkt. No. 1-1 at 12-21). Original Claim F(1) argues that the trial court erred in refusing to allow the police investigative reports to be admitted at trial under Virginia's Rape Shield Law. (Dkt. No. 1-8). Original Claim G(1) alleges that the trial court erred in refusing to allow the police investigative reports to be used to impeach the victim's testimony. (Dkt. No. 1-8). Original Claim J(1) contends that the trial court erred in failing to strike five jurors for cause. Original Claim L(1) alleges that the trial court erred in allowing hypothetical testimony of the forensic toxicologist. (Dkt. No. 1-4).

Graybill raised each of these claims in his state habeas petition, but failed to raise them at trial or on direct appeal. Accordingly, the Supreme Court of Virginia found that these claims were defaulted. (Dkt. No. 38-22 at 8-9, 11, 13-14) (citing Slayton v. Parrigan, 205 S.E.2d 680,

682 (Va. 1974)).[6] Slayton held that "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction" when the issues "could have been raised and adjudicated at petitioner's trial and upon his appeal to this court...." Id. The Fourth Circuit has stated that Slayton "is a valid state procedural rule, independent of the federal question and adequate to support the judgment" and thus is sufficient to prohibit federal review of claims. Royal v. Taylor, 188 F.3d 239, 245 (4th Cir. 1999) (citing Smith v. Murray, 477 U.S. 527, 533-39 (1986)).

In the present case, Graybill cannot escape the fact that these claims are procedurally defaulted because he cannot show cause and actual prejudice to overcome the default. Wolfe, 565 F.3d at 160. Graybill has not demonstrated that the factual or legal basis for any of these claims were "not reasonably available to [him] at the time of the state proceeding." Hedrick v. True, 443 F.3d 342, 366 (4th Cir. 2006). With regard to Original Claim C, as soon as Graybill listened to voir dire he would have been aware that the potential jurors were not asked the questions he wanted asked. Similar logic applies to Original Claim F(1), Original Claim G(1), Original Claim J(1), and Original Claim L(1) as Graybill was present during the trial and would have personally witnessed the trial court commit these alleged errors. Accordingly, Graybill has not met the standard to demonstrate cause to excuse his procedural default. Thus, this Court dismisses Original Claims C, F(1), G(1), J(1), and L(1) as procedurally barred.

### 4. *Original Claims H(2) and I*

Original Claims H(2) and I concern allegations of jury tampering and misconduct on behalf of the prosecutor and the Commonwealth. Specifically, Original Claim H(2) alleges that

---

[6] Graybill v. Dir. of the Dept. of Corrections, Record No. 101740 (Va. July 5, 2011).

20

the prosecutor knowingly, willfully, and intentionally concealed the victim's prior sexual assault of a five-year-old boy. (Dkt. No. 1-1 at 3). Original Claim I alleges that the Commonwealth's Attorney's office and the Clerk's office tampered with the jury list. (Dkt. No. 1-6). Like the claims discussed immediately above, Graybill raised each of these claims in his state habeas petition, but failed to raise them at trial or on direct appeal. Accordingly, under <u>Slayton</u> this Court is prohibited from reviewing these claims as they are procedurally defaulted. <u>Slayton</u>, 205 S.E.2d at 682.

Graybill has not demonstrated cause and prejudice to excuse the default. In the present case, Graybill has provided no explanation as to why he could not have presented these claims on direct appeal. Thus, this Court must dismiss Original Claims H(2) and I as procedurally barred.

### 5. *Additional Claim 1*

In Additional Claim 1, Graybill argues that trial counsel was ineffective for failing to construct a trial brief. (Dkt. No. 33 at 3). Petitioner argues that it is elementary legal procedure to draft a trial brief and failure to do so is sufficient to satisfy <u>Strickland</u>. Petitioner, however, neglects the fact that he failed to present this argument on direct appeal or as part of his state habeas petition. Thus, this claim is procedurally defaulted and Graybill has not demonstrated cause and actual prejudice to excuse the default.

Graybill has failed to excuse his procedural default because he has failed to present a "substantial" claim of ineffective assistance of counsel. <u>Martinez</u>, 132 S. Ct. at 1318. Here, Graybill's claim satisfies neither cause nor prejudice under <u>Strickland</u>. With regard to prejudice, Graybill has failed to explain how the preparation of a trial brief or trial notebook would have altered the outcome of the trial, and thus has failed to show prejudice. Regarding performance,

preparation of a trial brief is but one decision out of many decisions made while developing and

pursing a trial strategy. Development of a trial strategy falls squarely within counsel's

discretion. Gonzalez, 553 U.S. at 249. Thus, failure to prepare a trial brief does not constitute

deficient performance. Because Graybill has failed to satisfy either the performance or prejudice

prong of Strickland, Graybill has not made a "substantial" showing of ineffective assistance of

counsel to excuse his procedural default. Martinez, 132 S. Ct. at 1318. Accordingly, the Court

must dismiss Additional Claim 1 as procedurally barred.

### 6. *Additional Claim 2*

Graybill alleges that trial counsel was ineffective for failing to draft written questions

"for impeachment purposes ... of complaining witness on numerous contradicting statements in

police reports" and consequently was unprepared for hearings. (Dkt. No. 33 at 2). Graybill

asserts trial counsel ought to have used "bank debit purchase records, statements and Detective

Tolleys [sic] duct tape" as impeachment evidence, (Dkt. No. 33 at 3), but largely fails to specify

what questions he would have asked based off of these materials. Graybill also states trial

counsel ought to have asked the victim whether he was tied up or bound during the evening,

whether they stopped while en route to Graybill's residence, and whether anyone, such as

Bowles, left that evening. (Id.). Finally, Graybill states trial counsel ought to have asked

whether the victim had previously had sexual relations with a male. (Id. at 4). As with

Additional Claim 1, this claim was not presented in state court either on direct appeal or in state

habeas review. Thus, this claim is procedurally defaulted.

Again, Graybill cannot demonstrate cause to excuse his procedural default because he has

failed to present a "substantial" claim of ineffective assistance of counsel. Martinez, 132 S. Ct.

at 1318. The decision to prepare written questions to ask regarding potential impeachment

22

material is an aspect of trial strategy that is within the discretion of trial counsel. <u>Gonzalez</u>, 553 U.S. at 249. The trial transcript clearly indicates counsel repeatedly used the transcripts of the victim's statements to police and the transcript of the victim's preliminary hearing testimony to impeach his trial testimony. (2/25/08 Tr. 198-220). Thus, Graybill cannot establish deficient performance. Furthermore, Graybill has failed to allege how asking additional suggested impeachment questions would have had an outcome-altering effect. Consequently, Graybill has not met either the performance or prejudice prong of <u>Strickland</u> and thus cannot make a showing of "substantial" ineffective assistance of counsel. <u>Martinez</u>, 132 S. Ct. at 1318. Thus, the Court must dismiss Additional Claim 2 as procedurally barred.

### 7. *Additional Claim 3*

In the portion of Additional Claim 3 that is not duplicative, Graybill contends that trial counsel was "aloof and disoriented" during hearings. (Dkt. No. 33 at 4). Additional Claim 3 was not presented in state court either on direct appeal or on state habeas review. Thus, this claim is procedurally defaulted.

Graybill has failed to demonstrate cause to excuse his procedural default. Graybill bears the burden of showing that trial counsel's performance was deficient and that he was prejudiced by the deficient performance. <u>Strickland</u>, 466 U.S. at 687. It is widely accepted that "'it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.'" <u>Elmore v. Ozmint</u>, 661 F.3d 783, 863 (4th Cir. 2011) (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 791 (2011)). Graybill has failed to present any evidence indicating that trial counsel was anything other than professional and prepared during trial. Trial

23

counsel filed several pre-trial motions[7] and forcefully defended Graybill at trial. Indeed, trial counsel's efforts were so successful that Graybill was acquitted on two charges that carried potential life sentences and, further, the malicious wounding charge was reduced to unlawful wounding. Finally, for the charges of which Graybill was ultimately convicted, trial counsel presented sufficient evidence to warrant sentences below the maximum period of incarceration permissible by law. Graybill received a seven-year sentence on the object sexual penetration charge, a charge that carried a maximum sentence of life, and a three-year sentence on the malicious wounding count, a charge that carried a maximum five-year sentence.

Finally, Graybill was represented by two attorneys at trial. Graybill makes no claim of lack of professionalism or preparedness against his second trial attorney. As the Fourth Circuit has noted, "'the presence of a second attorney during the proceedings seriously undermines appellant's claim of ineffective assistance of counsel.'" Frye v. Lee, 235 F.3d 897, 907 (4th Cir. 2000) (quoting Lopez-Nieves v. United States, 917 F.2d 645, 647 (1st Cir. 1990)). Consequently, Graybill can satisfy neither the performance nor the prejudice prong of Strickland. Thus, because Graybill has failed to make a "substantial" claim of ineffective assistance of counsel, Martinez, 132 S. Ct. at 1318, Graybill cannot excuse his procedural default and this Court must dismiss Additional Claim 3.

---

[7] Review of the Circuit Court of the County of Botetourt records indicates trial counsel filed at least the following written pre-trial motions: Motion for Reduction of Bond (1/11/2007); Motion for Discovery (1/22/2007); Motion in Limine to Preclude Statements Allegedly Made by Co-Defendant (4/27/2007); Motion for Subpoena Duces Tecum for the Victim's Medical Records (4/27/2007); Motion in Limine to Preclude Evidence of Involuntary Drugging (6/5/2007); Notice to Introduce Evidence of Victim's Prior Homosexual Conduct (8/13/2007); Motion in Limine on Various Topics (8/13/2007); Motion for Competency Evaluation (9/21/2007); and Memorandum Regarding Competency (2/11/2008).

24

### 8. *Additional Claim 7*

In Additional Claim 7, Graybill argues that trial counsel was ineffective because he "intentionally lost the trial" as evidenced by counsel's "failing to offer oral opening statement or closing statement of facts, [and] failing to construct trial agenda memorandum."[8] (Dkt. No. 33 at 14-15). Graybill's Additional Claim 7 was not presented in state court either on direct appeal or on state habeas review, and thus, this claim is procedurally defaulted.

As an initial matter, the Court notes that the majority of Additional Claim 7 is unsupported, factually, by the record. Trial counsel did make an opening statement at trial, (2/25/08 Tr. 96-98), and gave a closing argument, (2/26/08 Tr. 261-72). Moreover, even had counsel decided not to make an opening statement or closing argument that alone would not be sufficient to constitute ineffective assistance of counsel. Indeed, "deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003). Furthermore, it is well accepted that "[t]he defendant must ...overcome the presumption that the representation 'might be considered sound trial strategy.'" See United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010) (quoting Strickland, 466 U.S. at 689)). Here, Graybill has not presented evidence to overcome the presumption as there is no record evidence to support his allegations. Thus, he cannot satisfy the performance prong of Strickland, let alone make a "substantial" showing of ineffective assistance of counsel. Accordingly, this Court must dismiss Additional Claim 7.

---

[8] With regard to Graybill's allegations concerning the failure "to construct [a] trial agenda memorandum" the Court believes this argument is duplicative of Graybill's Additional Claim 1, which the Court dismissed as explained above.

25

### 9. *Additional Claim 10*

Additional Claim 10 asserts that the trial court erred by not calling more jurors to the venire. (Dkt. No. 33 at 10-11). This Claim was not presented on direct appeal or during Graybill's state habeas review. Thus, this claim is procedurally defaulted. Graybill cannot, however, show cause to excuse his procedural default because he cannot show "'some objective factor external to the defense [that] impeded [petitioner's] efforts' to raise the claim in state court at the appropriate time." Breard, 134 F.3d at 620 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Here, the number of persons called to the venire would have been known to Graybill during his trial and there is no reason he could not have presented this claim on direct review. Rose v. Lee, 252 F.3d 676, 687 (4th Cir. 2001) ("[A] petitioner cannot establish cause when the facts underlying the claim were in existence and were available upon a reasonably diligent search."). Thus, this Court must dismiss Additional Claim 10 as procedurally barred.

### C. Sufficiency of the Evidence Claim

To the extent that Graybill seeks to challenge the sufficiency of the evidence in his federal habeas petition, in which Graybill alleges that the evidence was insufficient to convict him of unlawful wounding and object sexual penetration at trial, this Court must dismiss that claim. At this stage of the proceedings, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier or fact could have found proof of guilt beyond a reasonable doubt."[9] Jackson v. Virginia, 443 U.S. 307, 324 (1979); Wilson v. Greene 155 F.3d 396, 405-06 (4th Cir. 1998). Indeed, "the Jackson inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather

---

[9] This Court's review of the evidence is limited to the record evidence. Herrera v. Collins, 506 U.S. 390, 402 (1993).

whether it made a rational decision to convict or acquit." Herrera, 506 U.S. at 402 (emphasis omitted).

The Court of Appeals of Virginia's consideration of the record evidence in this case adhered to the Jackson standard, despite not explicitly citing it.[10] The Court of Appeals correctly stated the applicable Virginia law, highlighting that credibility of the witnesses was a matter solely for the jury, Sandoval v. Commonwealth, 455 S.E.2d 730, 732 (Va. Ct. App. 1995), and that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim," Wilson v. Commonwealth, 615 S.E.2d 500, 507 (Va. Ct. App. 2005).[11] Furthermore, the Court of Appeals correctly noted that the fact finder, as part of judging witness credibility, "is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 500 S.E.2d 233, 235 (Va. Ct. App. 1998).[12]

Nor does the Court of Appeals' decision rest on an unreasonable finding of facts. See 28 U.S.C. § 2254(d); 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Applying the above cited law to the facts, the Court of Appeals reasoned that "[n]otwithstanding appellant's claims to the contrary, the fact finder could reasonably reject appellant's account that this was a consensual sexual encounter between three men" because although the victim "could not recall all of the events of the evening, his testimony was corroborated by his physical condition." Graybill v.

---

[10] When a state's highest court does not rule on the merits, as is the case here, a federal court may look through that decision to the underlying merits opinion, here the opinion by the Court of Appeals of Virginia. Ylst v. Nunnemaker, 501 U.S. 791, 803-04 (1991).
[11] Graybill v. Commonwealth of Virginia, No. 2231-08-3, at 5 (Va. Ct. App. Feb. 23, 2009).
[12] Graybill v. Commonwealth of Virginia, No. 2231-08-3, at 6 (Va. Ct. App. Feb. 23, 2009).

27

Commonwealth of Virginia, No. 2231-08-3, at 6 (Va. Ct. App. Feb. 23, 2009). The Court of Appeals went into detail concerning the physical evidence that corroborated the victim's account. Id. Finally, the Court of Appeals highlighted Graybill's flight from the area, when police visited his residence, as giving the jury additional evidence of Graybill's guilt. Id. at 6-7.

This Court acknowledges that Graybill's account of the night conflicts with that of the victim. Although some of the physical evidence presented at trial, specifically the location of the victim's tooth inside Graybill's trailer, rather than outside it, appears to corroborate Graybill's account over that of the victim, there was still ample physical evidence presented at trial for the jury to discount Graybill's version of events. In essence, Graybill asks this Court to do what it is not permitted to do—weigh the evidence differently than the trier of fact to find in Graybill's favor. See Marshall v. Lonberger, 459 U.S. 422, 433 (1983). Thus, Graybill is not entitled to federal habeas relief and the sufficiency of the evidence claim must be dismissed.

### D. Ineffective Assistance of Trial Counsel Claims

It is undisputed that the state court applied the correct legal standard—Strickland—to determine whether trial counsel provided effective assistance. Thus, in order to be granted relief, Graybill must demonstrate that the state court denial of his claims was an "unreasonable application" of the Strickland standard. 28 U.S.C. § 2254(d)(1).

### 1. Original Claims A(1) – A(4): DNA Evidence and Defense Expert

Original Claims A(1) - A(4) concern the tooth[13] DNA evidence that was not brought to court for use at trial during the testimony of Graybill's DNA expert. In Claim A(1), Graybill asserts that trial counsel was ineffective for allowing the trial to proceed without the DNA

---

[13] This evidence is sometimes referred to as the "tooth and crown" evidence, but the physical evidence was one tooth, not a separate tooth and crown.

28

evidence. (Dkt. No. 1-1 at 17). In Claim A(2), Graybill argues trial counsel was ineffective for discussing the failure to ship the tooth DNA evidence in the presence of the jury and for failing to use the slide show presentation. (Id.). In Claim A(3), Graybill asserts trial counsel was ineffective for failing to request a continuance to have the DNA evidence brought to court. (Id.). In Claim A(4), Graybill asserts trial counsel was ineffective for failing to move for a mistrial after the afore detailed problems with the physical DNA evidence occurred in view of the jury. (Id.).

The Supreme Court of Virginia considered all of these allegations and properly applied the Strickland standard to determine that these alleged failures by trial counsel failed to satisfy Strickland. Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 2-3 (Va. July 5, 2011). With regard to Claims A(1) and A(3) the Supreme Court of Virginia stated "Petitioner does not allege what difference, if any, having the physical evidence would have made. Furthermore, counsel pursued the evidence regarding the tooth and crown in order to contest an abduction charge, of which petitioner was acquitted." Id. at 2. The court also noted that "all of the important evidence related to the tooth and crown was before the jury" because "the analyst who tested the evidence for petitioner testified that it contained DNA consistent with the victim and the analyst's report and photographs of the tooth and crown were admitted into evidence." Id. Thus, because Graybill was acquitted of the abduction charge, it is clear that he cannot prove prejudice. With regard to his other two convictions, Graybill has not alleged how the missing physical evidence could have affected the result, especially in light of the fact that the jury was given photographs of the tooth and clearly believed the evidence as shown by Graybill's acquittal in the abduction charge. Therefore, Graybill has also failed to prove prejudice with regard to his other two convictions. Accordingly, having failed to show that the Supreme Court

of Virginia's disposition of Claims A(1) and A(3) was an unreasonable application of the Strickland standard, the Court dismisses these claims.

With regard to Claims A(2) and A(4), Graybill contends that the time spent searching for the missing DNA evidence was disruptive, tainted the jury's opinion of the evidence, and warranted a mistrial. The Supreme Court of Virginia again found that these allegations did not satisfy the Strickland prejudice prong. With regard to Graybill's claim that the disruption prejudiced the jury against him, this Court's review of the trial transcript revealed only a brief exchange between trial counsel and the witness regarding the missing tooth. (2/26/08 Tr. at 141).[14] Indeed, trial counsel has stated that the exchange and search lasted approximately five minutes and not the twenty minutes that Graybill alleges. (Dkt. No. 38-17 at 27-28). Graybill has offered no explanation as to why this brief exchange would have prejudiced the jury against him; nor can he, as the jury acquitted him on the abduction charge, thereby showing that they believed the evidence and were capable of ruling in his favor.

With regard to the failure to request a mistrial, Claim A(4), relying on the record evidence, the Supreme Court of Virginia reasoned that "Petitioner fails to show that a mistrial

_____

[14] The exchange was as follows:
Q: Are these the items, in this box, are these the items that were sent to your lab?
A: Yes.
Q: Would you open that up and you can stand up, it's quite okay, and just remove the items. We're not allowed to bring scissors in the courtroom.
A: Because I don't have any.
[Attorney 1]: Thank you. (inaudible). That tooth is in there somewhere.
Court: Folks, lets don't have a private conversation. Just respond to any questions that may be presented to you.
A: (inaudible)
Court: Ma'am, can't hear you.
[Attorney 2]: You gotta use the microphone.
A: I don't see the crown with this.
[Attorney 1]: Okay, would you open this other package. Is that the carpet sample that was sent to you?
A: Yes.

30

motion would have been successful given the evidence relating to the tooth and crown that was presented or that the jury was prejudiced against petitioner after observing the search for the evidence given the jury acquitted petitioner of the abduction charge, for which the tooth and crown were important [evidence]." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 3 (Va. July 5, 2011). Indeed, Graybill has not explained how trial counsel could have prevailed on a motion for a mistrial in light of the applicable standard for a mistrial under Virginia law. Virginia requires that the jury hear evidence that is so "improper" and "so prejudicial" that it cannot be cured by a cautionary instruction from the court. See Beavers v. Commonwealth, 427 S.E.2d 411, 420 (Va. 1993). Furthermore, the "question [is one] of fact to be resolved by the trial court in each particular case." Id. In this case, in light of the fact that the pictures of the missing evidence were introduced into evidence, (2/26/08 Tr. 143), thereby eliminating even the slightest hint the evidence was fabricated, the trial court did not even find it necessary to issue a curative instruction. Thus, this is hardly an example of evidence so prejudicial that even a cautionary instruction would be insufficient to protect the defendant's rights. Accordingly, because Graybill has failed to demonstrate that but for counsel's alleged errors, the result of the proceeding would have been different, this Court must dismiss Claims A(2) and A(4).

## 2. *Original Claims A(6), A(7), and L(2): Prosecution's Expert Witness*

Original Claims A(6), A(7), and L(2) concern the prosecution's forensic toxicologist's allegedly improper testimony at trial. In Claim A(6), Graybill argues that trial counsel was ineffective for failing to challenge the admissibility of the forensic toxicologist, James John Kuhlman's, testimony at a pre-trial hearing. (Dkt. No. 1-1 at 26-33 & Dkt. No. 1-4 at 1-33). Specifically, the toxicologist should not have been allowed to base his opinion on urine test

31

results when blood test results ought to have been used. In Claim A(7), Graybill asserts that trial counsel was ineffective for failing to object to the hypothetical questions the Commonwealth asked the toxicologist concerning the effects of certain drugs on an individual, and that the testimony ought to have been suppressed. (Id.). In Claim L(2), Graybill argues that trial counsel was ineffective for failing to present competent legal argument as to why the toxicologist should not have been allowed to answer the Commonwealth's hypothetical questions. (Id.).

To put the forensic toxicologist's testimony in proper context, one must also consider the testimony of the forensic nurse, Nurse Tarpley, who examined the victim when he went to the hospital. Nurse Tarpley testified that no blood was collected because too much time had passed between the time of the assault and the victim's trip to the hospital. (2/26/08 Tr. at 89). The victim was assaulted on the evening of September 9, 2006, but the sexual assault examination did not occur until 2 pm the following day. (2/25/08 Tr. at 230-236). Nurse Tarpley explained that after twelve hours, drugs are metabolized by the body and no longer present in the bloodstream, but can still be detected in the urine. (2/26/08 Tr. at 89-90). Thus, in accordance with standard procedures, Nurse Tarpley took a urine sample for drug testing. (Id. at 89).

Based on the evidence collected by Nurse Tarpley, the toxicologist testified that the urinalysis showed the victim had ingested two drugs. (2/25/08 Tr. at 335-37). The drugs were amitriptyline, an anti-depressant that is also prescribed for insomnia and migraine headaches, (Id. at 337-38), and cyclobenzaprine, a muscle relaxant, (Id. at 338). However, on the basis of the urinalysis alone he could not determine the level of the drugs in the victim's body and thus could not testify to how they affected the victim specifically. (Id. at 336). When the toxicologist began to testify about the effects of the drugs on the central nervous system, Defense counsel objected and argued that a proper foundation for the testimony had not been established. (Id. at

32

338). The trial court overruled the objection, noting that the Commonwealth had not asked the witness to testify about the effects on the victim specifically, but rather about the effect of the drugs in general. (Id. at 339). Trial counsel made a further objection when the Commonwealth posed a hypothetical question regarding whether the drugs could have caused the symptoms the victim recounted during his trial testimony. (Id. at 342). The basis for trial counsel's objection was that the toxicologist did not "have the right sample" because he only had a urine sample and not a blood sample. (Id. at 342). After hearing the toxicologist testify that because the drugs were present in the urine they could cause the side effects he had described and that the only variable was the intensity of those side effects, the trial court overruled counsel's objection. (Id. at 343-44).

The Supreme Court of Virginia addressed each of Graybill's above allegations and found that none of them satisfied either the performance or prejudice prong of Strickland. Regarding trial counsel's failure to challenge the toxicologist's potential hypothetical testimony at a pre-trial hearing, the court reasoned that the record revealed counsel objected to the Commonwealth's hypothetical questions of the toxicologist but was overruled. Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 5 (Va. July 5, 2011). The Supreme Court of Virginia further noted that Graybill had not articulated any steps to prevent the testimony from being admitted that trial counsel could have taken during a pre-trial hearing that were not taken during the trial. Id. Thus, the Supreme Court of Virginia concluded that Graybill had failed to satisfy the either prong of Strickland. Id.

With regard to Graybill's claim that trial counsel was ineffective for failing to object and failing to have the toxicologist's testimony in response to the Commonwealth's hypothetical questions suppressed, the Supreme Court of Virginia noted that these allegations lacked a factual

33

basis. <u>Graybill v. Dir. of the Dept. of Corrections</u>, Record No. 101740, at 6 (Va. July 5, 2011).

As noted above, trial counsel did object to the Commonwealth's hypothetical questioning of the toxicologist. (2/25/08 Tr. at 338, 342). The Supreme Court of Virginia concluded, in light of the fact that counsel's objections were overruled and that Graybill failed to present any basis on which the answers to the hypothetical questions ought to have been suppressed, that Graybill failed to satisfy the either the deficient performance or prejudice prong of <u>Strickland</u>. <u>Id.</u> at 6. Furthermore, this Court's review of the record has not revealed any impermissible or speculative expert testimony by the prosecution's forensic toxicologist. This Court does not doubt that Graybill sincerely believes the testimony of the prosecution's forensic toxicologist ought to have been excluded, but belief without a corresponding legal foundation for that belief is insufficient to warrant habeas relief. Because Graybill has failed to satisfy the performance or prejudice prong of <u>Strickland</u> with regard to his allegations concerning trial counsel's performance in relation to the testimony of the prosecution's forensic toxicologist, this Court must dismiss Claims A(6), A(7), and L(2).

### 3. *Original Claims A(5) and A(8): Voir Dire*

Graybill also makes two ineffective assistance of counsel claims based on trial counsel's conduct during voir dire. In Original Claim A(5), Graybill alleges that trial counsel was ineffective for failing to object to the trial judge's refusal to allow "crucial voir dire questions" to be asked of the jury. (Dkt. No. 1-1 at 1 & Dkt. No. 1-3 at 5). In Original Claim A(8), Graybill claims that trial counsel was ineffective for failing to ask each witness to identify themselves by name during voir dire for the court record. (Dkt. No. 1-1 at 36).

With regard to Original Claim A(5), Graybill asserts that the questions he wanted to ask the prospective jurors were designed to determine whether the potential jurors were prejudiced

34

against homosexuals or certain sexual activity. The Supreme Court of Virginia held that this claim satisfied neither the performance nor the prejudice prong of Strickland. Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 3 (Va. July 5, 2011). The record showed that "counsel submitted proposed voir dire questions prior to trial, [and] several of the questions were excluded by the trial court on the grounds that they revealed facts of the case rather than the prejudice of the jurors…." Id. at 2-3. Further, the court noted that the record showed the prospective jurors were informed of the nature of the case and were asked whether they could be impartial given the charges and whether they believed Graybill was guilty by virtue of his homosexuality. Moreover, the court struck two jurors "based on their responses…." Id. at 4.

This Court finds that the Supreme Court of Virginia's application of Strickland to the voir dire concerns raised by Graybill was not unreasonable. A trial court has discretion to exclude voir dire questions. Thomas v. Commonwealth, 688 S.E.2d 220, 237 (Va. Ct. App. 2010) (stating "it is within the trial court's sound discretion to decide when a defendant has had" a "'full and fair' opportunity to ascertain whether prospective jurors 'stand indifferent' in the cause") (internal citations omitted). Here, the trial court allowed sufficient voir dire to reveal bias, as shown by the court's decision to strike two jurors for cause. The trial court need not allow the Defendant to ask every conceivable question in order to ensure an unbiased jury. Thus, the trial attorney's decision not to pursue what would have been a futile objection cannot be said to be ineffective assistance of counsel. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (noting that without evidence that "a continuance stood a reasonable chance of being granted, [petitioner] cannot demonstrate that reasonable counsel would necessarily have requested a continuance."). Thus, this Court must dismiss Claim A(5).

35

The Supreme Court of Virginia also rejected Original Claim A(8), finding that Graybill had not satisfied the <u>Strickland</u> standard. Relying on an affidavit from counsel the court noted that "counsel had a chart which included the names of each juror, that both counsel and petitioner knew the names of the jurors when they answered questions, and that counsel noted on the chart each of the juror's remarks." <u>Graybill v. Dir. of the Dept. of Corrections</u>, Record No. 101740, at 7 (Va. July 5, 2011). On this basis the court held that Graybill had failed to demonstrate that counsel's performance was deficient or that he was prejudiced by counsel's conduct. This Court agrees. Counsel's conduct during voir dire included submitting potential questions to the Judge and keeping track of those answers such that he could successfully move to have two potential jurors stricken for cause. Finally, Graybill has not alleged he was unable to keep track of the juror's identities. Thus, the Supreme Court of Virginia's application of <u>Strickland</u> was not unreasonable under these facts. Accordingly, this Court dismisses Claim A(8).

### 4. Original Claim A(9): Conflict of Interest

Original Claim A(9), perhaps the most outlandish claim among Graybill's many claims, alleges that one of Graybill's two attorneys entered into a homosexual relationship with Graybill's co-defendant and life partner, Bowles. Graybill specifically alleges that his attorney "did actively pursue a sexual relationship with Mr. Bowles before the petitioners [sic] trial, [and] prior to the sentencing hearing and after the conclusion of the trial for months did actively pursue Mr. Bowles, via the Internet or World wide-web...." (Dkt. No. 1-1 at 5). The only evidence of this relationship that Graybill presents is a statement by Bowles. Graybill presents no evidence to corroborate Bowles's statement. Graybill argues that this relationship created a conflict of

36

interest, and as a result, counsel was ineffective at trial. He further argues that prejudice should be presumed in this case.

The Supreme Court of Virginia reviewed the evidence, addressed Graybill's arguments, and found that the Strickland standard was not satisfied. This Court finds that the Supreme Court of Virginia's holding was not an unreasonable application of Strickland. First, Graybill's claim is undermined by the fact that Graybill had two attorneys at trial and Graybill has not alleged any unethical conduct or conflict of interest on the part of his second attorney. Frye, 235 F.3d at 907 (4th Cir. 2000) ("[T]he presence of a second attorney during the proceedings seriously undermines appellant's claim of ineffective assistance of counsel.").

Second, with regard to Graybill's argument that prejudice should be presumed in his case, this Court disagrees. While under Strickland, prejudice is presumed where "an actual conflict of interest adversely affected [the] lawyer's performance," Cuyler v. Sullivan, 446 U.S. 335, 350 (1980), Graybill has not demonstrated that his trial counsel's alleged romantic interest in Bowles rose to the level of an actual conflict of interest. An actual conflict of interest exists when the attorney's interests and the defendant's interests "diverge with respect to a material factual or legal issue or to a course of action." Cuyler, 446 U.S. at 356, n.3. Furthermore, prejudice is only presumed "if the conflict has significantly affected counsel's performance – thereby rendering the verdict unreliable, even though Strickland prejudice cannot be shown." Mickens v. Taylor, 525 U.S. 162, 173 (2002). Finally, unless "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding … there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.25-6 (1984).

37

In the present case, although Graybill alleges that his trial counsel's alleged sexual relationship with Bowles "remov[ed] all motive to effectively defend, Paul C. Graybill, Jr[.]," (Dkt. No. 1-1 at 5), Graybill makes no specific allegations of error committed by trial counsel as a result of that conflict of interest or divergence in strategy as to specific course of action during trial. Indeed, this Court's review of the record indicates counsel filed several pre-trial motions, see supra n. 11 (listing pre-trial motions filed by counsel), and vigorously defended Graybill at trial. These actions resulted in Graybill's acquittal on two charges that carried life sentences in prison and a reduction in the malicious wounding charge to unlawful wounding. Finally, Graybill was only sentenced to seven years on the object sexual penetration charge, which carries a maximum sentence of life, and three years on the malicious wounding charge, which carries a maximum sentence of five years. Thus, because the Supreme Court of Virginia's application of Strickland was not unreasonable and this Court must dismiss Claim A(9).

### 5. Original Claim E: Venue

In Claim E, Graybill argues that trial counsel was ineffective because he failed to move for a change of venue "despite the outrageous amount of pretrial media, newspaper and inter alia, news coverage, which ultimately denied Mr. Graybill a fair and impartial trial[.]" (Dkt. No. 1-1 at 34). However, in rejecting his claim, the Supreme Court of Virginia noted that Petitioner had failed "to proffer any evidence of media coverage of his case that would have supported a motion for a change of venue" and that the record showed that only one potential juror had heard or read anything about the case in the news, and further, that potential juror "stated that he could put aside what he had read and consider the case based on the evidence presented." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 12 (Va. July 5, 2011). It is well established that trial tactics are left to the discretion of counsel, and whether to move for a change of venue

38

is a trial tactic. See e.g., Cox v. Norris, 133 F.3d 565, 573 (8th Cir. 1997) (holding that counsel's decision not to request a "change of venue because he believed other counties were prone to harsher sentences" despite pretrial publicity of the case was "not outside the range of professional competence"); Weeks v. Jones, 26 F.3d 1030, 144 n.13 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688–89) (holding that a motion for change of venue "is the type of tactical decision that the Supreme Court has recognized that a criminal defendant's counsel may elect as a reasonable choice considering all of the circumstances and has cautioned courts against questioning."). Further, in Virginia there is a presumption that a criminal defendant can receive a fair trial in the venue where the trial occurred. Swisher v. Commonwealth, 506 S.E.2d 763, 770 (Va. 1998). In order to overcome that presumption a defendant must produce evidence "demonstrating that the feeling of prejudice on the part of the citizenry is widespread and is such that would 'be reasonably certain to prevent a fair trial,'" Mueller v. Commonwealth, 422 S.E.2d 380, 388 (Va. 1992) (quoting Stockton v. Commonwealth, 314 S.E.2d 371, 380 (Va. 1984)). Thus, because there was no evidence of widespread prejudice on the part of the jury and because Graybill has produced no evidence regarding the jury's bias, this Court finds that the Supreme Court of Virginia's application of Strickland was not unreasonable and Claim E must be dismissed.

### 6. Original Claims F(2), G(2), and O: Rape Shield Law

Graybill also makes several allegations regarding trial counsel's conduct in relation to the application of Virginia's Rape Shield Law. Specifically, in Claim F(2) Graybill argues trial counsel was ineffective because he failed to argue certain evidence was admissible despite Virginia's Rape Shield Law. (Dkt. No. 1-1 at 3). In Claim G(2), Graybill alleges that trial counsel was ineffective for failing to argue the proper case law to use the police investigative

39

reports to impeach the victim's testimony. (Id.). In Claim O, Graybill asserts that trial counsel was ineffective for failing to prepare competent legal argument regarding Virginia's Rape Shield Law in counsel's motion in limine. (Dkt. No. 1-8).

The Supreme Court of Virginia rejected Graybill's arguments that trial counsel was ineffective because Graybill had failed to satisfy either the performance or prejudice prong of Strickland. Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 11 (Va. July 5, 2011). Specifically, the Court noted that Graybill failed "to proffer the arguments counsel should have made or the case law to which counsel should have cited." Id. at 11-12. This Court finds that the Supreme Court of Virginia's application of Strickland was not unreasonable.

The decision regarding which arguments to make and what evidence to present at trial lies within the discretion of trial counsel. Gonzalez, 128 S.Ct. at 1770; Taylor, 484 U.S. at 418. This rule recognizes the complexity of the law at stake, the importance of the rights at stake for the accused, and the practical necessities of trial. The Supreme Court has explained:

> Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial. These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is designed to promote. In exercising professional judgment, moreover, the attorney draws upon the expertise and experience that members of the bar should bring to the trial process. In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume.

Gonzalez, 128 S. Ct. at 1770. Examination of the trial record shows that trial counsel comported himself well within the bounds of professional competence. Before the commencement of trial,

40

trial counsel filed a motion to allow the presentation of impeachment evidence including statements the victim made regarding a sexual encounter with another man, and evidence the victim had had prior consensual sexual contact with Graybill prior to the night at issue. (Dkt. No. 38-17 at 35-37). The motion was granted in part and denied in part, allowing the evidence of prior consensual sexual contact between the victim and Graybill to be admitted into evidence. (Dkt. No. 38-17 at 32-33). Thus, at trial Graybill testified that he had had two prior consensual sexual encounters with the victim. (2/26/08 Tr. 150-151). He further testified that each of these encounters began when he saw the victim walking alongside the road and he offered the victim a ride. (Id.). Finally, Graybill testified that he had seen the victim "at places where gay people frequent" and that is why he believed the victim was interested in having sexual encounters with Graybill. (2/26/08 Tr. 151). This presentation of evidence, in light of the trial court's rulings, does not evidence deficient representation. Furthermore, Graybill has not offered specific evidence or argument as to how he was prejudiced by counsel's performance. Accordingly, this Court must dismiss Claims F(2), G(2), and O.

### 7. *Original Claims J(2) and K: Jurors*

In Claims J(2) and K, Graybill argues trial counsel was ineffective for failing to challenge certain jurors for cause.[15] Specifically, Graybill maintains that one juror should have been struck for cause because her daughter was the victim of a crime 11 years ago, (Dkt. No. 1-1 at 24), and

---

[15] The Court does not see how these claims differ legally or are factually distinct and thus considers them together.

another juror should have been struck for cause because the case detective was an established customer of the juror's business, (Dkt. No. 1-1 at 25).[16]

Under Virginia law, a juror may not be struck simply because the juror has "preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." Cressell v. Commonwealth, 531 S.E.2d 1, 9 (Va. 2000). Indeed, "[t]he constitutional guarantee of an impartial jury does not contemplate excluding those who have read or heard news accounts concerning the case or even exclusion of those who may have formed an opinion based on such accounts.... The test, instead, is whether a juror is capable of laying aside a preconceived opinion and rendering 'a verdict solely on the evidence.'" Id. at 6 (quoting Wilmoth v. Commonwealth, 390 S.E.2d 514, 516 (Va. 1990)). Thus, only those jurors whose voir dire answers indicate that they cannot be impartial must be struck for cause. See id. at 9 (citing Griffin v. Commonwealth, 454 S.E.2d 363, 364 (Va. Ct. App. 1995)). In determining whether a potential juror should be struck for cause the court should considers "the juror's entire voir dire, not merely isolated statements." Lovitt v. Commonwealth, 537 S.E.2d 866, 875 (Va. 2000).

In the present case, the record is devoid of any indication that either potential juror would have been biased and incapable of setting aside that bias to render a fair and equitable verdict. With regard to the potential juror whose daughter was the victim of a crime, the court asked whether in light of her daughter's experience, the potential juror could be "fair and impartial to someone who is charged with, at least partially, things that could be similar." (2/25/08 Tr. 47-49). At first the potential juror replied that she wasn't sure and she made some additional

_____

[16] Graybill also argues, generally, that other jurors ought to have been struck for cause. However, he fails to name them or provide any explanation for why they ought to have been struck for cause. Thus, this Court dismisses these arguments.

inaudible comments. Id. To clarify the inaudible comments, the court re-asked the question and the potential juror replied "I said I think I could be impartial to the evidence ...." Id. The court then asked if the juror had "any doubt as to whether you could do that?" and the potential juror replied twice that she did not have any doubt that she could be fair and impartial. Id. Similarly, the potential juror who knew the case detective, when asked by the court whether he could be impartial, replied that nothing in his business relationship with the case detective would affect his ability "to be fair and impartial in this case" and that he could "weight [sic] the evidence just like anyone else's." (2/25/08 Tr. 25).

Thus, nothing in either "juror's responses during voir dire indicate that [either] juror would be prevented or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." Lovitt, 537 S.E.2d at 875. Accordingly, the Supreme Court of Virginia's holding that Graybill had failed to meet either the performance or prejudice prong of Strickland was not unreasonable because "[g]iven [the juror's] responses, counsel was not ineffective for failing to have these jurors struck for cause." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 14 (Va. July 5, 2011). As the Supreme Court of Virginia correctly explained, "the first juror indicated that she thought she could be impartial, she had no doubt that she could base any decision on the law and the evidence presented at trial, and she presumed the petitioner was innocent until proven guilty beyond a reasonable doubt." Id. Similarly, the Supreme Court of Virginia found the second challenged juror could be impartial based on his responses to the court's voir dire. Id. Therefore, this Court must dismiss Original Claims J(2) and K.

43

### 8. *Original Claims M, P, and Q: Jury Venire*

Next, Graybill asserts ineffective assistance of counsel claims in relation to trial counsel's handling of the jury venire. In Claim M, Graybill alleges that trial counsel was ineffective for failing to object to the Commonwealth's deliberate reduction of the master jury list from 60 to 33 persons. (Dkt. No. 1-6 at 2-3). Graybill has failed to support this allegation with any evidence that the Commonwealth purposefully reduced the jury pool to increase its chances of obtaining a guilty verdict. Conclusory allegations alone are insufficient to entitle Graybill to habeas relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), overruled on other grounds by Gray v. Netherland, 518 U.S. 152, 165-66 (1996). Accordingly, the Supreme Court of Virginia's holding that Graybill had satisfied neither the performance or prejudice prong of Strickland, Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 15 (Va. July 5, 2011), was not unreasonable and this Court must dismiss Claim M.

In Claim P, Graybill alleges trial counsel was ineffective for failing to object "to the fact that the jury list in-fact [sic] excluded any venireman that were: [h]omosexuals, resided in a predominately homosexual neighborhood; any one [sic] under 40 years of age, any one [sic] with a possible liberal profession…." (Dkt. No. 1-1 at 35). He argues that exclusion of homosexuals prevented him from being tried by a jury "of his peers." (Id.). Graybill's argument is premised on the mistaken assumption that a "jury of his peers" must include individuals who share his sexual orientation, age, or political affiliation. However, all the law requires is that Graybill be tried by an impartial jury free from exception, bias, or prejudice randomly chosen from a cross section of the community. United States v. Meredith, 824 F.2d 1418, 1424 & n.3 (4th Cir. 1987) (finding litigant not entitled to a specific number of minorities on a jury, only to a jury randomly chosen from a representative pool). The allegations that Graybill has raised regarding two jurors

44

that he alleges ought to have been struck for cause were found wanting both by the Supreme Court of Virginia and this Court. Furthermore, Graybill has made no additional specific allegations that the other jurors were not impartial or harbored any bias or prejudice against him. The Supreme Court of Virginia correctly cited the applicable legal principles and noted that the record demonstrated that "the jurors indicated they would be fair and impartial and base their decision on the law and the evidence." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 16 (Va. July 5, 2011). Furthermore, the Supreme Court of Virginia stated that Graybill had failed to offer "any evidence to show that any of the categories of people listed in his claim were excluded from the venire." Id. Accordingly, the Supreme Court of Virginia's holding that Graybill had failed to satisfy either the performance or prejudice prong of Strickland was not unreasonable, and thus, this Court must dismiss Claim P.

In Claim Q, Graybill argues that trial counsel was ineffective for failing to object to collective questioning of the jurors and for failing to insist on individual questioning of the potential jurors. (Dkt. No. 1-1 at 36). Under Virginia law, "[a] criminal defendant has no right to individual voir dire." Buchanan v. Commonwealth, 384 S.E.2d 757, 784 (Va. 1989). The record indicated and the Supreme Court of Virginia noted that "the trial court questioned the jurors about their ability to be impartial, that two jurors, who indicated they could not, were struck, and that the remaining jurors all indicated that they could be impartial." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 17 (Va. July 5, 2011). Thus, the Supreme Court of Virginia correctly held that Graybill had failed to satisfy either prong of the Strickland test. Id. Accordingly, this Court must dismiss Claim Q.

### 9. Original Claim N: Forensic Testing of Bed Linens

In Claim N, Graybill claims trial counsel was ineffective for failing to ensure the state forensic laboratory tested the victim's bed linens, which Graybill claims would have exonerated him. (Dkt. No. 1-1 at 35-36). At trial, evidence was produced that the victim's tooth and blood were found in Graybill's home. (2/26/08 Tr. 118, 123). Consequently it is unclear, and Graybill provides no cogent explanation, how any evidence found on the bed sheets would have proved exculpatory.[17] Nor has Graybill offered any scientific testing on the bed sheets, conducted after the trial, to support his claim that the bed sheet evidence would have exonerated him, had it been introduced at trial. Under generally accepted legal principles applicable to habeas proceedings, this failure dooms Graybill's claim of ineffective assistance of counsel because "'without a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply <u>Strickland's</u> standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" <u>Anderson v. Collins</u>, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting <u>United States v. Lane</u>, 926 F.2d 694, 701 (7th Cir. 1991)). <u>See also</u> <u>Bassette v. Thompson</u>, 915 F.2d 932, 940 (4th Cir. 1990) ("The great failing of the appellant on his claim that other evidence should have been presented during the sentencing phase of his trial is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called.").

---

[17] Graybill appears to believe the sheets would be exculpatory because they would confirm Graybill's version of events, rather than the victim's. However, at best the sheets could be additional evidence of Graybill's version of events and could not, on their own, prove exculpatory, as presence of DNA on the sheets alone cannot prove the encounter between Graybill and the victim was consensual.

46

Given that Graybill did not make any showing of how the bed sheet evidence would have been exculpatory, or even what the tests would have shown had they been introduced at trial, the Supreme Court of Virginia's holding that Graybill had failed to satisfy the prejudice or performance prongs of Strickland was not unreasonable. Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 15 (Va. July 5, 2011). Accordingly, this Court must dismiss Claim N.

### E.  Ineffective Assistance of Appellate Counsel Claims

Graybill makes several allegations that his appellate counsel rendered ineffective assistance of counsel. In Claim B, Graybill alleges appellate counsel was ineffective for failing to raise a specific trial objection, regarding the forensic toxicologist's hypothetical testimony that was overruled by the trial judge. (Dkt. No. 1-5). In Claim D(1), Graybill asserts that appellate counsel was ineffective for failing to meet with him to discuss the grounds on which to appeal. (Dkt. No. 1-1 at 2). In Claim D(3), Graybill argues appellate counsel was ineffective because he failed to follow Graybill's instructions regarding which issues to raise on appeal. (Id.).

In holding that Graybill had failed to meet either the performance or prejudice prong of Strickland, the Supreme Court of Virginia held that the "selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 8 (Va. July 5, 2011). Indeed, appellate counsel's choice of which issues to pursue is largely beyond reproach, even if potentially meritorious issues are not pursued, because "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) ("Neither Anders nor any other decision of this Court suggests,

47

however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."). Thus, a meeting with Graybill to review potential claims for appeal was not required, just as it was not required that appellate counsel raise every potential ground for appeal, or follow Graybill's suggested grounds for appeal. Accordingly, the Supreme Court of Virginia's application of Strickland to Claims B, D(1), and D(3) was not unreasonable. Thus, this Court must dismiss Graybill's claims.

In Claim D(2), Graybill alleges that appellate counsel was ineffective because he entered "into a co-conspirator" relationship with trial counsel "to conceal and cover-up" trial counsel's conflict of interest and sexual relationship with Graybill's co-defendant. (Dkt. No. 1-1 at 2). The Supreme Court of Virginia found that this claim satisfied neither prong of the Strickland test because "[p]etitioner fail[ed] to offer any evidence that appellate counsel knew of or attempted to conceal any alleged misconduct by trial counsel." Graybill v. Dir. of the Dept. of Corrections, Record No. 101740, at 10 (Va. July 5, 2011). Graybill has not presented any evidence of the co-conspirator relationship or, as noted earlier, any credible evidence of the underlying alleged conflict of interest. Conclusory allegations are not sufficient to support a claim of ineffective assistance of counsel. Nickerson v. Lee, 971 F.2d 1125, 1126 (4th Cir. 1992), overruled on other grounds by Gray v. Netherland, 518 U.S. 152 (1996). Therefore, the Supreme Court of Virginia's application of Strickland was not unreasonable and accordingly, this Court must dismiss Claim D(2).

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires that the Court issue or deny a certificate of appealability when it enters a final order

"adverse to" a federal habeas petitioner.  A certificate of appealability will not issue unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In order to do so, the petitioner must show that reasonable jurists could disagree about the petition's merits or that "the issues presented [are] adequate to deserve encouragement to proceed further." Miller–El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)).  Having considered the record and the relevant legal standards, the Court finds that Graybill has not made the requisite substantial showing, and a certificate of appealability is therefore **DENIED.**

## V.       Conclusion

For the reasons discussed above, the Petition for a Writ of Habeas Corpus is **DENIED** in its entirety and the Respondent's Motion to Dismiss is **GRANTED**.  An appropriate order shall issue this day.

**ENTER**: This ___ day of July, 2012.

_James C. Turk_
Senior United States District Judge

49